IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LESLIE MATSUDA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security<br>Administration,<br><br>Defendant. | Civil No. 25-00444 MWJS-RT<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

## INTRODUCTION

This is an appeal from the denial of an application for Social Security disability insurance benefits. In that application, Plaintiff Leslie Matsuda represented that severe pain in her back and leg has made it difficult for her to stand and walk. And, she attested, this difficulty (along with others) has prevented her from continuing to work full time.

The Administrative Law Judge (ALJ) recognized that Matsuda's physical impairments—some of which have required surgery—could indeed cause this degree of pain. The ALJ nonetheless denied Matsuda's application. He reasoned, principally, that Matsuda was not truly experiencing the amount of pain she claimed because she

had acknowledged being able to do things like walk her dog, occasionally go shopping

(with assistance), complete light chores, and drive herself to appointments.

With further elaboration of the administrative record, these could conceivably be

sufficient grounds for rejecting the credibility of Matsuda's representations about the

amount of pain she suffers.  But they are not sufficient on the current record.  For that

reason, and because no other adequate basis for affirming the denial is evident, the

decision is REVERSED and REMANDED for further administrative proceedings.

## BACKGROUND

Matsuda worked as a bartender for many years, but she stopped in 2020 after

suffering from severe back pain and depression.  Dkt. No. 7-1, at PageID.55–57

(Administrative Record (AR) at 36–38).  She developed significant leg and hand pain,

too, and eventually had surgery on her back in 2022 and 2023, and on her hands in 2023

and 2024.  *Id.* at PageID.32 (AR at 13).  In June 2022, Matsuda applied for Social Security

disability insurance benefits, which her lengthy history of gainful employment entitled

her to do.  *Id.* at PageID.30 (AR at 11).

The Social Security regulations require ALJs to follow "a five-step sequential

process for determining whether an applicant is disabled within the meaning of the

Social Security Act."  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir.

2011).  The steps are:

> (1) Is the claimant presently working in a substantially gainful activity?  (2) Is the
> claimant's impairment severe?  (3) Does the impairment meet or equal one of a

2

list of specific impairments described in the regulations?  (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25 (citing 20 C.F.R. § 404.1520).

After a hearing in July 2022 at which Matsuda (who was not then represented by counsel) testified, Dkt. No. 7-1, at PageID.47–69 (AR at 28–50), the ALJ issued a written decision denying her application, *id.* at PageID.27–42 (AR at 8–23).  The ALJ concluded that Matsuda passed the first two steps of the sequential analysis:  she was not working in a substantially gainful activity and she suffered from severe impairments.  *Id.* at PageID.32 (AR at 13).  The ALJ identified these as "lumbar radiculopathy and spinal stenosis status post L5-S1 laminectomy and discectomy on May 10, 2022 and revision discectomy at L5-S1 on February 27, 2023; bilateral carpal tunnel syndrome status post carpal tunnel release surgeries on July 10, 2023 and May 29, 2024; and morbid obesity." *Id.*  At step three, the ALJ found that Matsuda's impairments did not meet or exceed any listed impairment that would qualify her as disabled without regard to her age, education, and work experience.  *Id.* at PageID.34 (AR at 15).  So ALJ next assessed Matsuda's residual functional capacity, or "RFC," to aid in determining whether she could perform available work at steps four and five.

And this is where Matsuda's representations about the severity of her symptoms became important.  In her hearing testimony, Matsuda explained that she cannot "sit for

extended periods of time, nor can [she] stand." *Id.* at PageID.55 (AR at 36). She

elaborated:

> I'm in constant pain. I'm never not in pain. It's my back mostly that's hurt, and
> my leg is always, like, tingling, and it feels like—when I step sometimes, I get
> spasms in my nerve in my leg. That's what, like, makes me sometimes lose my
> balance. I can't sit for a very long time. Like, an hour is kind of the max that I
> can sit for right now . . . . I can stand now for a little more than an hour which is
> really nice. But even if I do that for longer than, like—the pain is, like, so bad
> that I'll struggle walking, like. And I do walk. I do exercise every day. I have a
> dog, and I take him for, like, little walks three times a day because he needs to
> get outside, and I also need the exercise. But I can't walk as far as I used to.
> Like, 30 minutes of walking, which I'm not—I'm very lucky I can do that.

*Id.* at PageID.61–62 (AR at 42–43).

In the face of that testimony, the ALJ asked a vocational expert to consider two

different hypothetical RFCs. In the first, the person would be able to, among other

things, "[s]tand and walk . . . two hours in an eight-hour period, and only one hour at a

time," as well as to "sit six hours in an eight-hour period" for "only one hour at a time."

*Id.* at 64 (AR at 45). In response to this hypothetical, the vocational expert opined that

the person could perform jobs that exist in significant numbers in the national

economy—namely, as a food and beverage order clerk, a charge account clerk, and a

telephone solicitor. *Id.* at PageID.65 (AR at 46).

The ALJ's second hypothetical posited a person who had the same limitations as

the first, except that the person would "be off task up to 15% of the workday due to

pain." *Id.* at PageID.66 (AR at 47). In that scenario, the vocational expert testified that

4

"[t]hat amount of time being off task at work would prevent maintaining employment, so no work would be available." *Id.*

In his written decision, the ALJ acknowledged that Matsuda's impairments "could reasonably be expected to cause the alleged symptoms." *Id.* at PageID.35 (AR at 16). And the ALJ did not suggest that Matsuda was malingering—that is, exaggerating or feigning her symptoms. But the ALJ nonetheless found that Matsuda's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The decision offered three such reasons. First, the ALJ reasoned that Matsuda's expressed pain was inconsistent with the activities she reported in her written application. *Id.* at PageID.36 (AR at 17). That "wide range of activities of daily living" including being able to "drive for short distances of up to 30 minutes," going "shopping once every two months with assistance to push the cart," and "tak[ing] her dog walking three times a day." *Id.* It also included that Matsuda "sometimes cooks although she cannot stand for long," that she does "the laundry every other week, car washing once every 6 months," and "trims the bushes, when she is in less pain." *Id.* The ALJ also noted a psychological consultative examiner's observation that Matsuda "has been able to do all of her daily activities depending on her pain level; she can cook simple meals, walk her dog, do light chores, and drive herself to appointments." *Id.*

The ALJ's second reason for rejecting Matsuda's pain testimony was based on the "longitudinal evidence of record."  *Id.*  Here, the ALJ summarized medical records, treatment notes, and examination findings, some of which found that Matsuda had "good strength in both legs" and "normal gait."  *Id.* at PageID.37–38 (AR at 18–19).

Third and finally, the ALJ noted that state agency consultants had rejected Matsuda's representations about her pain and symptoms, and he determined that these conclusions were "well supported by the consultants' reviews of the records, and generally consistent with the testing showing a chronic left lumbar radicular process . . . and exam findings of residual numbness and tingling."  *Id.* at PageID.38 (AR at 19).

For these reasons, the ALJ rejected Matsuda's testimony about the severity of her pain symptoms—which were more consistent with the ALJ's second hypothetical to the vocational expert—and instead adopted an RFC consistent with the first hypothetical. *Id.* at PageID.35 (AR at 16).  It followed that Matsuda could perform the jobs the vocational expert had identified and did not qualify as disabled.  *Id.* at PageID.40–41 (AR at 21–22).  The ALJ therefore denied Matsuda's application.

Matsuda's request for the Social Security Administration's Appeals Council to review the ALJ's decision was also denied, *id.* at PageID.20–22 (AR at 1–3), making the ALJ's decision the Commissioner's final decision.  This timely appeal followed.

//

//

## STANDARD OF REVIEW

The Commissioner's disability determination must be reversed when "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). To be sure, this standard is deferential, requiring "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up). "But it is not toothless." *Loniza v. King*, Civ. No. 23-00352, 2025 WL 435943, at *3 (D. Haw. Feb. 7, 2025).

## DISCUSSION

This case, like many Social Security disability cases, "hinge[s] on the credibility of a claimant's testimony about the severity of their symptoms." *Auapaau v. O'Malley*, Civ. No. 24-00176, 2024 WL 4301378, at *3 (D. Haw. Sept. 26, 2024). And when, as here, the Commissioner concludes that a claimant is not malingering but indeed has severe impairments "which might reasonably produce the pain or other symptoms alleged," the Commissioner can "reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (cleaned up); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). These reasons "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding

pain.'"  *Loniza*, 2025 WL 435943, at \*3 (quoting *Brown-Hunter*, 806 F.3d at 493 (cleaned up)).

Matsuda contends that the ALJ's written decision—which stands as the Commissioner's own—fell short of these requirements.  The court agrees.  None of the ALJ's three offered reasons for rejecting the credibility of Matsuda's symptom testimony meets the Ninth Circuit's stringent standards.

1.  The ALJ's preeminent reason for rejecting Matsuda's symptom testimony was that, in his view, her testimony was inconsistent with her activities of daily living.  This is an appropriate mode of analysis; it merely "follows the maxim that actions speak louder than words."  *Auapaau*, 2024 WL 4301378, at \*3.  Nonetheless, "there is a danger in conducting an analysis of that sort, for 'disability claimants should not be penalized for attempting to lead' their 'lives in the face of their limitations.'"  *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  As a "safeguard against that danger, the Ninth Circuit has provided guidelines for using evidence of a claimant's activities of daily living to assess a claimant's symptom testimony."  *Id.*  An ALJ must, in particular, consider whether the activities (1) "actually contradict the claimant's symptom testimony," or (2) "show that the claimant spends a substantial part of their day engaged in pursuits that are transferrable to a work setting,"  *Id.* at \*4 (citing *Orn*, 495 F.3d at 639).  "Absent one of these grounds, a claimant's daily activities cannot fairly be said to detract from a claimant's testimony about the effect of their disability."  *Id.*

The ALJ did not offer specific, clear, and convincing reasons for concluding that either of these grounds exists. As an initial matter, the ALJ nowhere suggested that Matsuda's activities of daily living involved "pursuits that are transferrable to a work setting." *Id.* Nor does the record, at least in its current form, support the conclusion that they are.

So the only question is whether Matsuda's activities "actually contradict" her symptom testimony. *Id.* But here again, the ALJ did not offer detailed enough reasoning to support his conclusion that they do. He noted that Matsuda could "drive for short distances of up to 30 minutes," go "shopping once every two months with assistance to push the cart," and "take[] her dog walking three times a day." Dkt. No. 7-1, at PageID.36 (AR at 17). He further noted that Matsuda "sometimes cooks although she cannot stand for long," and that she does "the laundry every other week, car washing once every 6 months," and "trim[ming] the bushes, when she is in less pain." *Id.*

But none of these activities actually contradicts Matsuda's testimony that she can, at most, do "30 minutes of walking," and that she is "very lucky" she can do even that. *Id.* at PageID.61–62 (AR at 42–43). And that is critical, because the ALJ concluded that Matsuda's RFC included the ability to walk for an hour at a time. *See id.* at PageID.35 (AR at 16). The vocational expert's opinion that a hypothetical person could perform available jobs was based on that assumption. *See id.* at PageID.64-65 (AR at 45-

9

46).  Just as nothing in Matsuda's activities actually contradicts her testimony that she

can only walk for 30 minutes at a time, nothing in the vocational expert's opinion

supports the conclusion that there is any available job she can perform with that 30-

minute limitation.

It is, of course, possible that with further elaboration of the record, the ALJ could

find a basis for concluding that Matsuda's activities of daily living do actually

contradict her symptom testimony.  For example, although Matsuda generally testified

that she could walk no more than 30 minutes at a time, she separately testified that she

walks her dog up to three times a day.  One might perhaps speculate that those walks

could sometimes be longer than 30 minutes.  But despite the ALJ's "special duty to fully

and fairly develop the record and to assure that the claimant's interests are considered,"

*Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d

441, 443 (9th Cir. 1983), the ALJ did not ask any follow up questions about the length of

Matsuda's walks at the hearing.  And neither his written decision nor the existing

administrative record offers any basis for concluding that they were longer than 30

minutes.  Nor did the ALJ identify any other activity—whether shopping, cooking, or

performing light chores—that would have involved more than 30 minutes of walking,

let alone develop a factual basis for reaching that conclusion.

And, in fact, an item in the administrative record suggests that even if Matsuda

did occasionally walk for more than 30 minutes, even that would not actually contradict

her symptom testimony:  as the psychological consultative examiner observed, Matsuda "has been able to do all of her daily activities *depending on her pain level*; she can cook simple meals, walk her dog, do light chores, and drive herself to appointments."  *Id.* at PageID.36 (AR at 17) (emphasis added).  This observation is significant, because Matsuda testified that she is virtually always in at least some pain.  *See id.* at PageID.61-62 (AR at 42-43).  And so even if the ALJ had identified some instances in which Matsuda had walked for more than 30 minutes—which he did not—he still would have needed to account for the fact that Matsuda might not be able to *consistently* walk that way.  The ALJ did not do so.

Accordingly, at least on the current record, the ALJ has not offered a sufficient basis for concluding that Matsuda's symptom testimony was actually contradicted by her activities of daily living.

2.  The ALJ's second reason for rejecting Matsuda's symptom testimony was based on the "longitudinal evidence of record," including medical records, treatment notes, and examination findings.  *Id.* at PageID.36–38 (AR at 17–19).  But the Ninth Circuit has held that "[o]nce the claimant produces medical evidence of an underlying impairment," as Matsuda has done here, "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc)).  Put

differently, it is not appropriate for an ALJ to "effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)).

Perhaps for that reason, the ALJ nowhere suggested that these objective medical records were *sufficient*, standing alone, to reject Matsuda's symptom testimony. And while "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008), the ALJ nowhere suggested that Matsuda's symptom testimony might actually be contradicted by the medical evidence. The ALJ's decision merely highlighted how the medical records do not offer any obvious *support* for Matsuda's testimony; it offers no explanation for why they would *contradict* that testimony.[1]

Because the ALJ did not offer any reasoning to support the conclusion that medical records contradicted Matsuda's symptom testimony, and because the court cannot say on this record that they do, the court cannot affirm on this ground.

---

[1]    In like manner, although the ALJ noted that some of Matsuda's symptoms had improved with treatment, *see* Dkt. No. 11, at PageID.1180-81—and while "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability," *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)—the ALJ did not find that any improvement was significant enough to "reliev[e]" Matsuda of the debilitating symptoms she had identified, let alone identify an evidentiary basis for reaching such a finding.

12

3.  That leaves the opinions of the state agency consultants.  In considering these, the ALJ merely offered that their conclusions were "well supported by the consultants' reviews of the records, and generally consistent with the testing showing a chronic left lumbar radicular process . . . and exam findings of residual numbness and tingling." Dkt. No. 7-1, at PageID.38 (AR at 19).

When, as here, an application for disability benefits is filed after March 27, 2017, current Social Security Administration regulations require an ALJ to consider, among other things, the "supportability" and the "consistency" of medical opinions in the administrative record before deciding whether they are persuasive.  20 C.F.R. § 404.1520c; *see generally Wade v. O'Malley*, Civil No. 23-00350, 2024 WL 3248021, at *3 (D. Haw. Feb. 16, 2024) (cleaned up).  "Supportability" is "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence."  *Id.* at *4 (cleaned up).  "Consistency," by contrast, focuses on "whether the medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim."  *Id.* (cleaned up).

The ALJ did not adequately explain how he considered the "supportability" and "consistency" factors here.  To be sure, the ALJ did use the words "supported" and "consistent."  But it is not enough to merely assert a conclusion about those factors; ALJs must *explain* how they considered them, and their explanations must be supported by substantial evidence.  *Id.*; *see also Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024)

13

("ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'").  Because the ALJ did not do so here, the court cannot affirm the denial on the ground that the ALJ had accepted the persuasiveness of the state agency consultants' opinions.

### CONCLUSION

Because the court has found no adequate basis in the record for affirming the Commissioner's decision denying Matsuda's application for Social Security disability insurance benefits, that decision is REVERSED and the case is REMANDED for further administrative proceedings consistent with this order.

IT IS SO ORDERED.

DATED:  March 25, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 25-00444 MWJS-RT, *Leslie Matsuda v. Frank Bisignano*; ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS